UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------X

SHAQUILLE CARTER,

                Plaintiff,                **MEMORANDUM & ORDER**

   - against -               No. 22-cv-6715 (KAM)(LB)

UNITED STATES OF AMERICA and
LYDIA ORTIZ,

               Defendants.

--------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

     Pro se Plaintiff Shaquille Carter ("Carter" or "Plaintiff")
commenced the instant action on October 24, 2022 based on events
that occurred while Plaintiff was incarcerated at the
Metropolitan Detention Center ("MDC") in Brooklyn, New York.
(ECF No. 1, Complaint, "Compl.")  Plaintiff alleges that on
September 30, 2021, while housed at the MDC, he sustained a
second degree burn on his right foot to which Defendants United
States of America (the "Government") and MDC employee,
Registered Nurse Lydia Ortiz ("RN Ortiz" and, together with the
Government, "Defendants"), failed to adequately attend, in
violation of the Federal Tort Claims Act, 28 U.S.C. § 1346(b),
("FTCA").  Plaintiff contends that, as a "result of the combined
negligence of [MDC] staff and medical personal," Plaintiff
suffered from pain and permanent disfigurement.  (Compl. ¶ 6.)

Plaintiff seeks "no [] less than $100,000.00" in damages, as well as "costs of suit." (Compl. at 3.)[1]

Presently before the Court is Defendants' motion to dismiss the Complaint (ECF Nos. 23-1, "Def. Mot." 24, "Def. Reply"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff opposes Defendants' motion to dismiss the Complaint. (ECF No. 22, "Ptf. Opp.")[2] For the reasons set forth below, Defendants' motion to dismiss the Complaint is **GRANTED** and Plaintiff's Complaint is **DISMISSED** in its entirety.

<u>BACKGROUND</u>

I.   **Factual Background**

A. **Plaintiff's Injury and Treatment**

According to the Complaint, on September 30, 2021, Plaintiff attempted to retrieve hot water from a faucet while he

---

[1] Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 was granted on November 30, 2022. (ECF No. 9.)

[2] Plaintiff's opposition to Defendants' motion to dismiss is labeled "summary judgment." However, Plaintiff's brief is fashioned as a response to Defendants' motion to dismiss. Furthermore, the exhibits included with Plaintiff's opposition brief are all either appended to the Complaint (ECF Nos. 22-2, 22-3, 22-6, 22-7), incorporated by reference into the Complaint (ECF No. 22-9), or matters of public record. (ECF Nos. 22-4, 22-5, 22-8.) *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it [] relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted). Accordingly, the Court conducts its analysis of Plaintiff's claims under the motion to dismiss standard, drawing all reasonable inferences in Plaintiff's favor.

was detained at the MDC.  (Compl. ¶ 5A.)[3]  Plaintiff alleges that the faucet sprayed hot water in a manner that is "not [] normal," and that he sustained second degree burns to his right foot as a result.  (Compl. ¶ 5A-C.)

Plaintiff alleges that he alerted an officer at the MDC, Officer A. Moonan, of his injury, who placed a call to seek out medical attention on Plaintiff's behalf.  (Compl. ¶ 5D-E.) Plaintiff alleges that notwithstanding Office A. Moonan's call for help, "[n]o medical attention was given" to him and that he wrote "an electronic cop-out order" requesting medical assistance on October 1, 2021 as a result.  (Compl. ¶ 5G.)  In response to Plaintiff's "cop-out order," Plaintiff allegedly received word on October 7, 2021 that he would be "placed on the schedule for a sick call."  (Compl. ¶ 5H) (ECF No. 1 at 13)

---

[3] The government alleges that at the time of the September 30, 2021 incident, Plaintiff was serving a carceral sentence in connection with his 2016 conviction for conspiracy to distribute marijuana and in connection with a 2021 conviction for possession with intent to distribute heroin, fentanyl, and cocaine.  (Def. Mot. at 9.)  Plaintiff does not dispute that in September 2021, Plaintiff was incarcerated at MDC subject to his criminal convictions, as distinct from the majority of MDC detainees, who are pretrial detainees. This distinction is relevant for purposes of Plaintiff's constitutional claims.  The right of a convicted prisoner "to be free from cruel and unusual punishment," including "a prison official's deliberate indifference to a substantial risk of serious harm" is protected under the Eighth Amendment, whereas the rights of "a pretrial detainee" in federal custody "are protected by the Due Process Clause" of the Fifth Amendment.  *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  In any event, the analysis is the same.  *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("We see no reason why the analysis should be different under the Due Process Clause of the Fifth Amendment," as compared to the Eighth Amendment.)  Because Plaintiff's convictions are a matter of public record, the Court takes judicial notice of the factual circumstances underlying Plaintiff's detention.  *See Richardson v. Nassau County*, 277 F. Supp. 2d 196, 203 (E.D.N.Y. 2003) ("[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).")

(record of October 7, 2021 email from "Sick Call" stating that Plaintiff "[has] been placed on the schedule for sick call.")

According to the medical records annexed to Plaintiff's Complaint, however, Plaintiff was brought to the medical services office for the first time on October 3, 2021 and examined the next day on October 4, 2021.  (ECF No. 1 at 4.)  On October 3, 2021, MDC staff sought to conduct an examination, but Plaintiff allegedly declined, explaining that he wanted to shower before his examination.  (ECF No. 1 at 5.)  Plaintiff was subsequently examined the next day by RN Ortiz, who diagnosed Plaintiff with second degree burns, placed Plaintiff on wound-care, and prescribed sulfadiazine, as well as ibuprofen to alleviate Plaintiff's pain.  (Compl. ¶ 5I, ECF No. 1 at 4.) Plaintiff alleges that in the time period leading up to his examination by RN Ortiz, MDC "[s]taff and medical personnel were negligent in failing to administer any proper medical attention to plaintiff's serious medical needs" and that "Defendants by their actions, failed to follow generally accepted medical standards," although Plaintiff does not identify the "generally accepted medical standards" Defendants' actions failed to meet. (Compl. ¶ 5J, 5N.)

Although the Complaint does not explicitly identify the date on which Plaintiff was first examined by RN Ortiz, as noted previously, the Complaint and exhibits to the Complaint indicate

that Plaintiff was examined by a medical professional within 3
or 4 days of his injury.  The medical records appended to
Plaintiff's Complaint state that he was initially brought into
the medical services office for a consultation three days after
the alleged incident, on October 3, 2021, and that Plaintiff
returned for an examination the next day.  (ECF No. 1 at 4.)
Within the Complaint, Plaintiff alleges that he "suffered from
severe pain for days before any medical attention was given,"
but does not specify how many days.  (Compl. ¶ 5K.)  The "Bureau
of Prisons Health Services Treatments" annexed to Plaintiff's
Complaint references a "10/04/2021" entry wherein RN Ortiz
appears to have included treatment notes in connection with her
examination of Plaintiff.  (ECF No. 1 at 4) (the treatment notes
from "10/04/2021" state that there are "no signs of infection"
and reflect a "Completed" status for the October 4, 2021 visit.)[4]

---

[4] Although Plaintiff's statement that he was not seen for "several days" is
not inconsistent with the medical records reflecting an examination that took
place 3-4 days after the September 30, 2021 incident, Plaintiff alleges in
opposition to Defendants' motion to dismiss that he was not seen for a longer
period of time.  Specifically, Plaintiff states that, although he does not
remember exactly how much longer, he estimates that he was not seen for 7-8
days and notes that the October 7, 2021 email from "Sick Call" indicates he
was not seen until at least October 7, 2021.  (Ptf. Opp. at 2.)  Ultimately,
the Court finds that the distinction between 3-4 days and 7-8 days is
immaterial with respect to the Court's analysis of the legal issues raised in
Plaintiff's Complaint.  Nevertheless, in considering the evidence of a 3-4
day delay that is reflected in the medical records affixed to Plaintiff's
Complaint, as compared to Plaintiff's admittedly faded memory regarding a
possible 7-8 day delay, the Court accepts as true that Plaintiff first met
with medical personnel on October 3, 2021 and was examined on October 4,
2021, based on the medical records attached to the Complaint.  *See also
Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (in
reviewing a motion to dismiss, the Court must "draw all facts—which [are]
assume[d] to be true unless contradicted by more specific allegations or
documentary evidence—from the complaint and from the exhibits attached

Plaintiff also affixed a "Clinical Encounter Administrative Note" from "10/03/2021" to the Complaint, which states that Plaintiff was seen for the first time one day prior, on "10/03/2021," but that Plaintiff stated his "prefer[ence] to wait until after shower[ing]" to receive treatment.  (ECF No. 1 at 5.)  Plaintiff appears to have been "seen for wound care and given supplies [on] 10/4 for self care," and was observed again on "10/06/2021," at which time he showed signs that he was "improving."  (ECF No. 1 at 4.)  Plaintiff was seen again on "10/10/21" and was noted as having "IMPROVED" on 10/11/2021. (*Id.*)[5]

Plaintiff also alleges that in the time period leading up to his examination by MDC medical personnel, he felt compelled to attend to his injury on his own by applying A&D ointment in hopes of preventing infection of the wound caused by his second degree burns.  (Compl. ¶ 5L.)  The A&D ointment that Plaintiff applied in an attempt to administer medical care to himself allegedly had the adverse effect of "prevent[ing] the wound from

thereto."

[5] In opposition to Defendants' motion to dismiss, Plaintiff argues that these medical records are fabricated and appears to include an additional claim for "falsification of records."  (Ptf. Opp. at 1.)  Because Plaintiff raises this for the first time in his opposition brief and has not sought leave of the Court to add an additional claim, the Court declines to consider this argument.  *Fitzsimons v. New York City District Council of Carpenters*, No. 23-815-CV, 2024 WL 221550, at *2 (2d Cir. Jan. 22, 2024) ("the district court [may] decline to consider . . . [allegations] raised [] for the first time in [] opposition to Defendants' motion to dismiss . . . Ordinarily, parties may not amend the pleadings through motion papers.")

healing when expected." (Compl. ¶ 5M.) Indeed, the treatment notes from RN Ortiz's "10/10/2021" examination of Plaintiff reflect that Plaintiff's burns "should have been healed by now but [that Plaintiff] has been alternating between silverdene," which he was advised to use on "10/03/2021" (ECF No. 1 at 5), and "A&D ointment." (ECF No. 1 at 6.) The "10/10/2021" treatment notes further note that Plaintiff was "advised to stop putting the A&D ointment" on his right foot. (*Id.*) Upon discontinuing his use of A&D ointment, Plaintiff's injury had "almost completely healed" by "10/11/2021." (ECF No. 1 at 8.)

Plaintiff alleges that notwithstanding his treatment, he sustained second degree burns as a direct and proximate result of Defendants' negligence . . . and that he was disabled, unemployable, and disfigured as a result. (Compl. ¶ 6.) Plaintiff anticipates that he will need "plastic surgery and mental therapy" to address the "pain of mind and body" and that he is "permanently disfigured" as a result of Defendants' negligence. (Compl. ¶¶ 6-7.)

**B. Administrative Remedies**

Plaintiff alleges that on November 19, 2021, he "filed an administrative claim . . . with the Northeast Regional Office" of the Bureau of Prisons ("BOP") under the FTCA. (Compl. ¶ 2) (ECF No. 1 at 14-15) ("Claim for Damage, Injury, or Death".) According to the December 10, 2021 letter from the Northeast

Regional Office of the BOP, which is affixed to Plaintiff's
Complaint, Defendant's "Administrative Tort Claim" was received
on "November 24, 2021" and Plaintiff was advised that the
Northeast Regional Office of the BOP may require "six months
from the date of receipt to review, consider, and adjudicate
[Plaintiff's] claim."  (ECF No. 1 at 11.)

Plaintiff alleges that he did not receive any response from
the Northeast Regional Office of the BOP with respect to his
"tort claim" following the initial confirmation of receipt on
December 10, 2021.  (Compl. ¶ 2B.)  Plaintiff construes BOP's
alleged failure to adjudicate his administrative claim as a
denial of that claim, pursuant to the language of the BOP "Tort
Claim Program" which states, in relevant part, that "[i]f you
have not received a letter . . . within six months after the
date the claim was filed, assume the claim has been denied."
(Compl. ¶ 2D.)  As of May 23, 2022, sixth months had passed
since the November 24, 2021 date on which Plaintiff's
administrative tort claim was received.  Accordingly, Plaintiff
alleges that his administrative claim was denied by the
Northeast Regional Office of the BOP as of May 23, 2022.
(Compl. ¶ 1B.)

## II.  Procedural Background

Plaintiff timely filed the instant Complaint on October 24,
2022 in the Southern District of New York.  (ECF No. 1,

Complaint, "Compl.")  Three days later, on October 27, 2022, Plaintiff's case was transferred to the Eastern District of New York and assigned to Judge Nina R. Morrison.  On December 6, 2023, the case was reassigned to the undersigned for adjudication of Defendants' motion to dismiss.

**LEGAL STANDARD**

## I.    Fed. R. Civ. P. 12(b)(1)

A party initiating a cause of action in a federal district court must assert grounds for the district court's exercise of "subject matter jurisdiction" and bears the burden of "prov[ing] by a preponderance of evidence that it exits." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "Dismissal of a case for lack of subject matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate" Plaintiff's claims. *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (internal quotation marks and citation omitted).

"A Rule 12(b)(1) motion challenging subject matter may be either facial or fact-based." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47 (2d Cir. 2016).  That is, if a motion to dismiss under Fed. R. Civ. P. 12(b)(1) is based on the factual allegations in the complaint and attached exhibits, the district court must determine whether the pleading alleges facts

that "affirmatively and plausibly" support plaintiff's assertion of jurisdiction, "accepting as true all material factual allegations [in] the complaint and drawing all reasonable inferences in" plaintiff's favor.  *Carter*, 822 F.3d at 56-57 (internal citations omitted).  If, by contrast, defendants proffer evidence outside the pleadings that calls the jurisdictional basis for Plaintiff's claims into question, the district court may "properly consider[] evidence outside the pleadings."  *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("To the extent that [defendants'] Rule 12(b)(1) motion place[s] jurisdictional facts in dispute . . . the district court properly consider[s] evidence outside the pleading.")  In such circumstances, the plaintiff must "come forward with evidence of [his] own to controvert [the evidence] presented by the defendant, or may instead, rely on the allegations in [the] pleading if the evidence proffered by the defendant is immaterial."  *Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (internal quotation marks and citation omitted).  "If the extrinsic evidence presented by the defendant is," in fact, "material and controverted, the district court will need to make findings of fact in aid of its decision."  *Carter*, 822 F.3d at 57.

## II.  **Fed. R. Civ. P. 12(b)(6)**[6]

Under Fed. R. Civ. P. 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The Court must dismiss the Complaint if Plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court reviews the Complaint, "accept[ing] all factual allegations as true," for the purposes of Defendants' 12(b)(6) motion, and "draw[ing] all reasonable inferences in" Plaintiff's favor.  *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021).  Particularly as it relates to pleadings "filed by *pro se* litigants," the Court is required to construe the pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62,

---

[6] It is unclear which of Plaintiff's claims Defendants seek dismissal of pursuant to Fed. R. Civ. P. 12(b)(1).  In any event, the Court finds that both Plaintiff's FTCA claims and Plaintiff's *Bivens* claim are more properly addressed under Fed. R. Civ. P. 12(b)(6).

67 (2d Cir. 2023) (internal quotation marks and citation omitted).  To the extent Plaintiff draws "legal conclusion[s] couched as factual allegation[s]," however, the Court is not bound to accept such statements as true.  *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (citing *Iqbal*, 556 U.S. at 678).  Neither can the Court "invent factual allegations that [Plaintiff] has not pled."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

In deciding a Rule 12(b0(6) motion, the Court may refer to "documents attached to [the Complaint] or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken."  *Grant v. County. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "*reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice of possession is not enough." (emphasis in original)).  "[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  Finally, the Court will not accept factual allegations in a Complaint that are "contradicted by other matters asserted or relied upon or

12

incorporated by reference by a plaintiff in drafting the complaint." *Tsinberg v. City of New York*, No. 20-cv-749 (PAE), 2021 WL 1146942, at *4 (S.D.N.Y. Mar. 25, 2021) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

### III.  Federal Tort Claims Act

As a general matter, "the United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Where an "unequivocally expressed" waiver of sovereign immunity is evident by virtue of "clear congressional consent," the terms of any such "consent to be sued . . . define [the] court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.* ("FTCA"), constitutes an explicit waiver of sovereign immunity for "claims against the United States, for money damages . . . [for] personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."

An FTCA claim is determined "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" 42 U.S.C. § 1346(b), in this case, New York.  The FTCA is "the exclusive remedy for a suit for damages for injury" caused by a government employee acting within the

scope of her employment. *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991). This means that "the FTCA makes individual government employees immune from common-law tort claims for acts committed within the scope of their employment." *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). The FTCA, however, "does not make [government employees] immune from claims of constitutional violations." *Id*. Plaintiff's FTCA claims, which the Court construes liberally to allege medical malpractice and negligence, must be analyzed under New York law. *See Guttridge v. United States*, 927 F.2d 730, 732 (2d Cir. 1991) (explaining that "the FTCA defines the liability of the United States in terms of that of a private individual under the law of the state where the alleged tort occurred.")

### A. Medical Malpractice

Under New York law, the elements of a medical malpractice claim are (1) "a deviation or departure from accepted medical practice," and (2) "evidence that such departure was a proximate cause of injury or damage." *Torres v. City of New York*, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001) (citing *Lyons v. McClauley*, 675 N.Y.S.2d 375, 376 (N.Y. App. Div. 1998)). In order to state a claim for medical malpractice, a plaintiff "must specify the injuries he suffered" as a result of the deviation from accepted medical practice and "allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of

care." *Isaac v. City of New York*, No. 17-cv-1021 (PGG), 2018 WL 1322196, at *7 (S.D.N.Y. Mar. 13, 2018).

### B. Negligence

A negligence claim under New York law generally requires: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Fed. Ins. Co. v. Distinguished Properties Umbrella Managers Inc.*, 721 F. Supp. 2d 293, 299 (S.D.N.Y. 2010).  With respect to the first prong, 18 U.S.C. § 4042 provides for a standard duty of care owed by BOP to prisoners in federal custody.  *See Smith v. United States*, 207 F. Supp. 2d 209, 214 (S.D.N.Y. 2002) (BOP has a "statutory duty . . . [to] exercise 'ordinary diligence' or reasonable care 'to keep prisoners safe and free from harm.") (internal citation omitted).  With respect to the second prong, "plaintiff bears the burden of proving fault on the part of the defendant." *Kane v. United States*, 189 F. Supp. 2d 40, 52 (S.D.N.Y. 2002); *see also Ducrepin v. United States*, 964 F. Supp. 659, 664 (E.D.N.Y. 1997) (Plaintiff must "establish constructive or actual notice of the defect on the part of the defendant.").  The last prong requires that "the plaintiff suffered damages as a proximate result of [the alleged] breach.'" *Williams v. Utica College of Syracuse University*, 453 F.3d 112, 116 (2d Cir. 2006).

### IV.  *Bivens* Liability

Although the FTCA applies only to allegations of tortious conduct, the United States Supreme Court has recognized an implied private right of action for damages against individual government officials who are alleged to have violated a plaintiff's constitutional rights as well. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court "recognized for the first time . . . a judicially-created remedy [for constitutional violations] stemming directly from the Constitution itself," with the purpose of "deter[ring] individual federal officers from committing constitutional violations." *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009). In the years since *Bivens*, the Supreme Court has extended *Bivens* to only two additional constitutional claims, a former congressional staff member's Fifth Amendment claim that she was terminated on the basis of her sex, *see Davis v. Passman*, 442 U.S. 228 (1979), and a federal prisoner's Eighth Amendment claim that he was denied medical treatment for his chronic asthma, which resulted in his death. *See Carlson v. Green*, 446 U.S. 14 (1980). Since then, the Supreme Court has "consistently refused to extend *Bivens* to any new context . . . for the past 30 years." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). Most recently, in 2017, the Supreme Court "made clear that expanding the Bivens remedy is now [] 'disfavored.'" *Abbasi*, 582 U.S. at 235 (citing *Iqbal*, 556 U.S. at 675); *see*

*also Egbert v. Boule*, 596 U.S. 482, 495 (2022) (in a case involving allegations of excessive force by a law enforcement officer, the Supreme Court acknowledged that "[w]hile Bivens and this case do involve similar allegations of excessive force and thus arguably present 'almost parallel circumstances' or a similar 'mechanism of injury,' these superficial similarities are not enough to support the judicial creation of a cause of action.").

### A. Exhaustion of Administrative Remedies

Where a plaintiff raises a *Bivens* claim in the context of alleged prison abuse, the Court must first determine whether "administrative remedies [that] are available [to the plaintiff] are exhausted" pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA").  *See Abbasi*, 582 U.S. at 148 (reiterating that the PLRA's "exhaustion provisions would apply to *Bivens* suits.")  Under the PLRA, Plaintiff must "us[e] all steps that the agency holds out, and do[] so properly."  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (The PLRA exhaustion requirement "entails both 'completing the administrative review process in accordance with the applicable procedural rules,' and providing the level of detail necessary.") (internal citation omitted).

### *1. BOP Administrative Remedy Program*

17

In accordance with the mandate of the PLRA, the BOP has a four-tiered "Administrative Remedy Program," which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. At the first step, an incarcerated individual must seek informal resolution of their concerns. 28 C.F.R. § 542.13. Within 20 days of the occurrence of a concerning incident or condition, if informal resolution efforts have not proven successful, the inmate may submit a BP-9 Administrative Remedy Request to the Warden. 28 C.F.R. § 542.14. Within 20 days of receiving the Warden's response, if the incarcerated individual is dissatisfied and seeks further review, he or she may file a BP-10 appeal to the Regional Director. 28 C.F.R. § 542.15. If the inmate seeks further review beyond the Regional Director, he or she may file a BP-11 appeal with the General Counsel within 30 days of receiving the Regional Director's response. 28 C.F.R. § 542.15.

### 2. BOP Statutorily-Mandated Procedures

For statutorily-mandated procedures, such as claims under the FTCA, an incarcerated individual presents their claim in accordance with the applicable law and regulations directly to the Regional Counsel pursuant to a process that is separate from the BOP Administrative Remedies Program. 28 C.F.R. § 542.10(b); 28 C.F.R. § 543.30, *et seq*. Upon receipt of an Administrative Tort Claim form, an inmate receives an acknowledgement letter

identifying the "presentment date and claim number."  28 C.F.R. § 543.32(a).  If the incarcerated individual does not receive a decision regarding his or her claim within six months of the presentment date, the claim is considered denied.  28 C.F.R. § 543.32(h).  At that point, the inmate may "then proceed file a lawsuit in the appropriate United States District Court."  *Id*.

### 3. Standard of Review for Administrative Exhaustion

The Second Circuit has recognized that an allegation that a plaintiff has failed to exhaust administrative remedies "is an affirmative defense."  *See Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004).  This defense "may [only] be raised by a motion to dismiss under Rule 12(b)(6), without resort to summary judgment, if the defense appears on the face of the complaint."  *Williams v. Metropolitan Detention Center*, 418 F. Supp. 2d 96, 101 (E.D.N.Y. 2005); *McCoy v. Goord*, 255 F. Supp. 2d 233, 247 (S.D.N.Y. 2003) ("If a failure to exhaust is apparent from the face of the complaint . . . a Rule 12(b)(6) motion is the proper vehicle.").

If, however, a plaintiff's failure to exhaust administrative remedies is not apparent on the face of the complaint, the court can only consider extrinsic evidence of non-exhaustion upon conversion of the motion to dismiss into a summary judgment motion.  Fed. R. Civ. P. 12(d) ("If, on a

19

motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not exclude by the court, the motion shall be treated as one for summary judgment under Rule 56"); *See Williams*, 418 F. Supp. 2d at 101 ("keeping in mind that failure to exhaust is an affirmative defense, and that exhaustion need not be pled to state a claim, it is [] appropriate . . . to proceed under a summary judgment standard, pursuant to Rule 56 . . . for dismissal [where] the materials show that there is no genuine issue of material fact pertaining to [plaintiff's] exhaustion of administrative remedies.")  In such circumstances, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

It is within the discretion of the district court to convert a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) into a motion for summary judgment under Fed. R. Civ. P. 56. *See Stephens v. Bayview Nursing & Rehab. Ctr.*, No. 07-cv-596 (JFB), 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment.") (internal quotation marks and citation omitted).

### B. *Bivens* Test

To decide whether a plaintiff has stated a claim under *Bivens*, the Court must "determine whether [Plaintiff's] claims invoke *Bivens* in a new context." *Arar v. Ashcroft*, 585 F.3d 559, 563 (2d Cir. 2009). The Court is also required to consider "whether an alternative remedial scheme was available to [Plaintiff], or whether . . . special factors counsel hesitation." *Id.* at 563 (internal quotation marks omitted). These "two steps . . . often [merge] into a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492.

The United States Supreme Court has "urged 'caution' before 'extending *Bivens* into any new context,'" beyond what the Supreme Court has approved. *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017). Particularly in the realm of prison administration, the Supreme Court has explicitly warned against extending *Bivens* in circumstances where plaintiffs had access to administrative remedies such as the Administrative Remedy Program promulgated by the BOP. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (holding that where "inmates . . . have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program (ARP)," an extension of *Bivens* is foreclosed.) In fact,

the Supreme Court has indicated that the enactment of the PLRA
itself may suggest that "Congress had specific occasion to
consider the matter of prisoner abuse and to consider the proper
way to remedy those wrongs" such that "it could be argued that"
the PLRA reflects "Congress['s] [choice] not to extend [*Bivens*]
. . . to cases involving other types of prisoner mistreatment."
*Abbasi*, 582 U.S. at 148-49.

### C. Eighth Amendment Deliberate Indifference

To a state a claim for deliberate indifference in violation
of the Eighth Amendment, Plaintiff must allege that he suffered
from "(1) a deprivation that is 'objectively, sufficiently
serious' that he was denied 'the minimal civilized measure of
life's necessities,' and (2) a 'sufficiently culpable state of
mind' on the part of the defendant official, such as deliberate
indifference to [a detainee's] health or safety." *Gatson v.
Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer v.
Brennan*, 511 U.S. 825, 834 (1994). However, "the Eighth
Amendment is not a vehicle for bringing medical malpractice
claims, nor a substitute for state tort law." *Smith v.
Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (noting that "not
every lapse in prison medical care will rise to the level of a
constitutional violation.") (internal citation omitted).
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to

22

medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (internal quotation marks omitted).

The first prong requires the Court to evaluate the alleged conditions "in light of contemporary standards of decency," although "there is no 'static test' to determine whether a deprivation is sufficiently serious." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012).  Where, as here, the basis for a prisoner's Eighth Amendment claim is a temporary delay . . . in the provision of otherwise adequate medical treatment, it is important to focus on the challenged *delay* . . . rather than the prisoner's underlying medical condition." *Carpenter*, 316 F.3d at 185 (emphasis in original).  Moreover, in most cases involving an allegation of delayed or denied medical care, "the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Carpenter,* 316 F.3d at 187 (explaining that the Court's "inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner.")

The second prong, which requires a showing of "deliberate indifference," must rise above the level of "mere negligence." *Jabbar*, 683 F.3d at 57 (internal citation omitted).  "[T]he official [must] know[] of, and disregard[] an excessive risk to

inmate health or safety." *Farmer*, 511 U.S. at 837 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under [the Supreme Court's] cases be condemned as the infliction of punishment" for purposes of an Eighth Amendment claim.)

## DISCUSSION

### I.   Plaintiff's FTCA Claim

The Court construes pro se Plaintiff's Complaint liberally to allege both a medical practice claim and a negligence claim pursuant to the FTCA.  For the reasons set forth below, neither can withstand Defendants' motion to dismiss.

#### A. Defendant RN Ortiz

As an initial matter, any attempt by Plaintiff to assert an FTCA claim against RN Ortiz or any individual MDC staff member is unsupported by governing law.  As noted previously, an FTCA claim can only be asserted against the United States and the FTCA is the exclusive remedy for allegations of tortious conduct, such as medical malpractice or negligence, by an employee of the government, acting within the scope of that employee's government employment.  *Rivera*, 928 F.2d at 609. "Therefore, to the extent Plaintiff [alleges] FTCA claims against [RN Oritz or any individual MDC staff member], they are dismissed." *Negron v. United States*, No. 19-cv-5442 (PMH), 2020 WL 564304, at *4 (S.D.N.Y. Sep. 21, 2020).

B. **Defendant United States of America**

1. *Medical Malpractice*

As noted previously, under New York law, "[i]n order to make out a prima facie case for medical malpractice, plaintiff must allege that (1) the [medical provider] owed a duty of care to the plaintiff; (2) the [medical provider] breached that duty by deviating from accepted medical practice; and (3) the alleged deviation proximately caused plaintiff's injuries." *Isaac*, 2018 WL 1322196, at *7 (internal citation omitted).

That Defendants owe a duty of care to Plaintiff is adequately alleged.  However, Plaintiff fails to allege sufficient facts to establish a prima facie case of medical malpractice because Plaintiff "does not explain how the delay in providing him with" treatment or the treatment itself "deviated from accepted medical practice." *Isaac*, 2018 WL 1322196, at *8. Nor does Plaintiff "describe the length of the delay" with sufficient particularity. *Id*. As noted previously, Plaintiff alleges that "[n]o medical attention was given," but then proceeds to describe exactly the "medical attention [that] was given." *See* (Compl. ¶¶ 5F, 5I) ("RN Lydia Ortiz noted that plaintiff had second degree burns, and placed plaintiff on wound care and proscribed [sic] ibuprofen 400mg for the pain."). Putting aside the potentially conflicting allegations about the number of days that passed before Plaintiff received medical

care, Plaintiff does not allege how the failure to receive medical care until October 3, 2021, October 4, 2021, or until any other later date, even "7-8 days" later (Ptf. Opp. at 2), constitutes a deviation from accepted medical care.[7]

Finally, Plaintiff alleges that "staff and medical personnel were negligent in failing to administer any proper medical attention . . . [and that] plaintiff was at risk of infection, he was unable to walk and suffered from severe pain before any medical attention was given."  (Compl. ¶¶ 5J, 5F.) Plaintiff, however, does not allege that he was "unable to walk" or that he experienced "severe pain" as a proximate result of the delay in medical care or the quality of medical care, as opposed to experiencing those circumstances as a proximate result of the underlying injury.  Moreover, according to the pleadings and Plaintiff's statements in the course of his criminal proceeding, there is no indication that the alleged "risk of infection" ever materialized or that Plaintiff believed it to have materialized.  *See United States v. Carter,* 15-cr-380

---

[7] Plaintiff argues in his opposition brief that the medical care he received was "below standard."  (Ptf. Opp. at 4.)  However, Plaintiff does not make any such allegations in his pleadings and the Court declines to consider these factual allegations, which are raised for the first time in his briefing and which conflict with the medical evidence in Plaintiff's pleadings.  *See Ojo v. United States*, No. 16-cv-4112 (MKB)(LB), 2019 WL 3852391, at *13 n.8 ("The Court does not consider allegations made for the first time in opposition to a dispositive motion."), *report and recommendation adopted*, No. 16-CV-4112 (MKB), 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019).

(S.D.N.Y.) (ECF No. 88) (Plaintiff stated "my foot could have been infected.  Thank god it wasn't."); (ECF No. 1 at 4) (the treatment notes from "10/04/2021" state that there are "no signs of infection"); (ECF No. 1 at 8) (noting that on 10/11/2021, Plaintiff's injury was "[a]lmost completely healed"); (Ptf. Opp. at 2) (Plaintiff acknowledges that "[he] has no medical experience or expertise to be able to professionally diagnose whether [the wound] was or wasn't infected.").[8]  Indeed, Plaintiff argues that, "by the time [he] [saw] medical, [he] was already suffering for days without any care and [his] wound had begun its healing process."  (Ptf. Opp. at 2.)  Putting aside the question of whether his symptoms were attributable to the alleged delay or quality of medical care, as opposed to the underlying injury, Plaintiff's statement that his wound "had begun its healing process" and the treatment notes indicating that Plaintiff was "improving" and ultimately "IMPROVED" (ECF No. 1 at 4), particularly after he discontinued use of an ointment that he initially applied against the recommendation of his medical provider, fail to state a claim that the medical

---

[8] Plaintiff also argues for the first time in his opposition brief that "medical[] inaction contributed to the delay of [his] wound healing and [his] foot worsening by becoming infected."  As noted previously, Plaintiff may not amend his pleading through his briefing in opposition to Defendants' motion to dismiss and the Court declines to consider new factual allegations raised "for the first time in response to a dispositive motion" *Ojo*, 2019 WL 3852391, at *13 n.8, particularly given the fact that these allegations conflict with Plaintiff's own statements regarding infection, as well as the medical records annexed to his pleadings.

care he received deviated from acceptable practice and proximately caused his injuries. Accordingly, Plaintiff does not allege sufficient facts in his pleadings to state a claim for medical malpractice.

### 2. Negligence

Plaintiff alleges in the Complaint that "[a]s a result of the fault of the defendant, by and through the staff and medical personnel at the Metropolitan Detention Center," Plaintiff "suffered second degree burns to the right foot and disfigurement" and that "these injuries resulted from negligence." (Compl. ¶¶ 4-5.)[9] The Court liberally construes these factual allegations to comprise the basis for a negligence claim pursuant to Plaintiff's invocation of the FTCA.

As noted previously, under New York law, to prove a claim for negligence, Plaintiff must establish three elements: "(i) defendant owed plaintiff a duty of care; (ii) defendant breached that duty; and (iii) the breach proximately caused plaintiff's injury." *Kane v. United States,* 189 F. Supp. 2d 40, 51-52 (S.D.N.Y. 2002). As with Plaintiff's medical malpractice claim, Defendant owed Plaintiff a statutory duty of care by virtue of

---

[9] In the Administrative Tort Claim that Plaintiff filed with the BOP, Plaintiff does not use the term negligence. However, Plaintiff alleges that "the [hot] water started spraying [from the faucet] which is not the normal function of the faucet" and that he "was burned as a result [of] that happening. 2nd degree burns." (ECF No. 1 at 14.)

his status as a federal prisoner.  Moreover, the Complaint
alleges that "[a]s a direct and proximate result of the combined
negligence of staff and medical personnel at [MDC], plaintiff
has suffered second degree burns to the right foot," which is
sufficient to allege causation at the pleading stage.  (Compl. ¶
6.)

However, Plaintiff does not allege facts that Defendant
breached its duty to "exercise ordinary care, or reasonable
care, to provide suitable quarters."  *Smith*, 207 F. Supp.2d at
214 (internal citation omitted).  In particular, Plaintiff's
Complaint does not allege that Defendants had actual or
constructive notice of the condition of the faucet or the danger
that the faucet posed, which is a required showing of the breach
element of a negligence claim under New York law.[10]  *See Smith v.
United States*, 207 F. Supp. 2d at 214 (S.D.N.Y. 2002) ("It is
clear that 'the mere failure to provide suitable quarters' is
not actionable: there must be fault.")  Accordingly, Plaintiff
does not allege sufficient facts in his pleadings to demonstrate
a prima facie case for negligence.

---

[10] Plaintiff argues, for the first time in his opposition brief, that his
injury was "caused by a faulty faucet due to the negligence of staff
repairing the hot water faucet after it being reported to staff several times
as well."  (Ptf. Opp. at 5.)  As with other new allegations raised for the
first time in Plaintiff's opposition brief, the Court declines to read these
allegations into the Complaint or otherwise amend the Complaint since
Plaintiff has not sought leave of this Court to amend the Complaint.  *See
Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 153 (2d Cir. 2013) ("[A] party may
not amend pleadings through statements in briefs.").

The Complaint fails to state a claim for relief under the FTCA with respect to Plaintiff's negligence claim and his medical malpractice claim.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's FTCA claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  Plaintiff's *Bivens* Claim

The Court construes Plaintiff's Complaint liberally to include a *Bivens* claim.  However, because Plaintiff has failed to state a claim for relief under *Bivens*, Plaintiff's *Bivens* claim must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[11]

### A. Exhaustion of Administrative Remedies

As noted previously, an allegation that a federal prisoner has failed to exhaust administrative remedies is an affirmative defense.  Although the issue of exhaustion may be resolved on a motion to dismiss if non-exhaustion is apparent from the face of the Complaint, here, Plaintiff does not indicate on the face of the Complaint that he failed to comply with the BOP's

---

[11] The Court considers Plaintiff's *Bivens* claim, including with respect to Defendants' argument regarding exhaustion, pursuant to Fed. R. Civ. P. 12(b)(6), not Fed. R. Civ. P. 12(b)(1).  *See Brito v. Vargas*, No. 01-cv-7753(FB), 2003 WL 21391676, at *1 (E.D.N.Y. June 16, 20023) ("Although defendants move to dismiss for failure to exhaust pursuant to Rule 12(b)(1), the Court agrees with the majority of the courts in the Eastern and Southern Districts of New York . . . [and] concludes that defendants' motion to dismiss for failure to exhaust is more appropriately addressed under Rule 12(b)(6).").

Administrative Remedy Program.[12]  Instead, he argues that the
PLRA does not apply.  (Ptf. Opp. at 4.)

The PLRA "[e]xhaustion [requirement] is mandatory—
unexhausted claims may not be pursued in federal court."
*Amadar*, 655 F.3d at 96; *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)
("[T]he PLRA exhaustion requirement requires proper exhaustion .
. . [so as] to eliminate unwarranted federal-court interference
with the administration of prisons.")  The BOP "has established
a four-step administrative remedies process that federal inmates
must follow to meet the PLRA's exhaustion requirement" for a
*Bivens* claim.  *Aguiar v. Murray*, No. 11-cv-3944 (DLI), 2014 WL
1330739, at *5 (E.D.N.Y. Apr. 1, 2014); 28 C.F.R. § 542.10, *et
seq.*  This includes the informal resolution required at step
one, 28 C.F.R. § 542.13; the initial BP-9 Administrative Remedy
Request at step two, 28 C.F.R. § 542.14; the BP-10 appeal at
step three, 28 C.F.R. § 542.15; and the BP-11 appeal at step
four, 28 C.F.R. § 542.15.

Plaintiff argues that he is exempt from the PLRA exhaustion
requirement and need not comply with the steps of the
Administrative Remedies Program, but this reflects a
misunderstanding of the relevant standard governing his *Bivens*

---

[12] To the extent Defendants offer evidence of non-exhaustion pursuant to Fed.
R. Civ. P. 56, "[b]ecause the court [] dispose[s] of Plaintiff's claims . . .
under Fed. R. Civ. P. [12b(b)(6)], it declines to convert Defendants' motion
to dismiss into a motion for summary judgment" and does not consider the
evidence of non-exhaustion appended to Defendants' motion to dismiss.

claim.  Specifically, Plaintiff argues that "BOP's
Administrative Remedies Program is not intended to address
claims for money damages . . . and has been described as a
seperate [sic] and distinct process from statutorily-mandated
administrative remedy procedures for tort claims."  (Ptf. Opp.
at 4.)  Plaintiff is correct that "[e]xhaustion under the FTCA
is separate and distinct from exhaustion under the PLRA" and
that "[t]he BOP's four step framework does not apply to [his]
claims . . . sounding in tort."  (*Id.*)  Indeed, this point is
not disputed among the parties.  *See* (Def. Reply at 6)
(Plaintiff argues that exhaustion under the FTCA is separate and
distinct from exhaustion under the PLRA.  The Government
agrees.").

However, the BOP's four-step framework does apply to
Plaintiff's *Bivens* claim and it is established law in this
Circuit that where a federal prisoner, like Plaintiff, "[does]
not comply with the BOP's [] procedural rules . . . he cannot
satisfy the PLRA's exhaustion requirement solely by filing []
administrative tort claims, or making informal complaints to the
MDC's staff."  *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007)
(ruling that a plaintiff pursuing a *Bivens* claim "cannot 'skip
the administrative process simply by limiting prayers for relief
to money damages' regardless of whether the BOP was authorized
to provide them" and rejecting the plaintiff's argument that

filing "administrative tort claims . . . excuse[s] [the plaintiff's] failure to exhaust" under the PLRA) (internal citation omitted).

Although Plaintiff's argument that the "he need not utilize the four steps of the BOP's Administrative Remedy Program" (Ptf. Opp. at 4), suggests that he has not complied with the PLRA exhaustion requirement, the Court does not dismiss Plaintiff's *Bivens* claim on this basis.

### B. *Bivens* Test

In any event, Plaintiff's *Bivens* claim is foreclosed because the BOP Administrative Remedy Program is the proper vehicle for relief. "*Bivens* relief [is] unavailable [where] federal prisoners could, among other options, file grievances through an 'Administrative Remedy Program.'" *Egbert*, 596 U.S. at 497 (citing *Malesko*,534 U.S. at 74.) Notably, the Court may not "superimpose[e] a *Bivens* remedy" based on Plaintiff's argument that the administrative process through which he sought medical attention took too long to result in relief. *Egbert*, 596 U.S. at 498 (the Court may not extend *Bivens* liability even to contexts where the Court "question[s] whether a given [existing] remedy is adequate" and "even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy'" could be.) That is because the relevant threshold inquiry in deciding

whether a *Bivens* claim is viable focuses on whether "there are alternative remedial structures in place," not whether the plaintiff believes the alternative remedial structure is adequate.  *Egbert*, 596 U.S. at 493 (The Supreme Court of the United States "hold[s] that a court may not fashion a *Bivens* remedy if Congress has provided" an alternative remedial structure, even if "existing remedies do not provide complete relief.")

### C. Eighth Amendment Claim

Moreover, Plaintiff fails to establish an underlying constitutional claim.  As noted previously, an Eighth Amendment claim for inadequate medical care in a prison setting requires factual allegations showing the existence of a sufficiently serious injury and deliberate indifference on the part of prison officials.  *Farmer*, 511 U.S. at 834.  Plaintiff fails to allege facts that satisfy either prong.

With respect to the second-degree burn on Plaintiff's right foot, this Court is very sympathetic to Plaintiff, but neither the Complaint, nor the exhibits to the Complaint indicate that Plaintiff's injury was "sufficiently serious, as an objective matter, to be actionable under the Eighth Amendment." *Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010).  Similarly, with respect to the alleged delay in medical treatment, Plaintiff fails to allege that "the actual medical consequences that

flow[ed] from the alleged" three-day delay posed a significant risk of harm. *Carpenter,* 316 F.3d at 187.   In his opposition brief, Plaintiff argues that the delay in care could have resulted in an infection.   Indeed, Plaintiff apparently expressed his concern regarding a possible infection to Judge Cote, writing letters to describe his "fear of [the wound] getting infected."  (Ptf. Opp. at 2.)   Despite Plaintiff's fears at the time, nothing in the medical records attached to Plaintiff's Complaint suggest that his fears came to fruition and that the wound was ever infected.   Indeed, Plaintiff also acknowledged in his letters to Judge Cote that the wound was never infected.  *See United States v. Carter,* 15-cr-380 (S.D.N.Y.) (ECF No. 88) ("Thank god it wasn't" infected.)

Plaintiff cites *Walker v. Vargas*, 11-cv-9034 (ER), 2013 WL 4792765 (S.D.N.Y. Aug. 26, 2013) in support of his argument that a serious burn can rise to the level of sufficiently serious. In that case, the court found that the plaintiff's allegations of "flooding in the kitchen" that resulted in "a serious burn to [the plaintiff's] foot," which "required weeks of treatment" were "sufficient to state a claim that the conditions in the kitchen posed a substantial risk of harm." *Vargas*, 2013 WL 4792765, at *7.  However, *Vargas* did not involve an alleged delay in medical treatment and, in any event, "not all claims regarding [burns] will be constitutionally cognizable" even if

claims of severe and serious burns are. *Armstrong*, 143 F.3d at 702 (noting that where a type of condition "may be of varying severity," the Court's analysis of an Eighth Amendment claim must "contemplate[] 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'") (internal citation omitted). As the Second Circuit has noted, "the seriousness of a delay in medical treatment may be decided by reference to the *effect* of delay in treatment." *Carpenter*, 316 F.3d at 186 (emphasis in original). Plaintiff's Complaint is devoid of factual allegations that the effect of the alleged three-day delay in medical risked was "further significant injury or the unnecessary and wanton infliction of pain." *Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

With respect to deliberate indifference, Plaintiff clarifies in his opposition brief that his *Bivens* claim relates both to RN Ortiz and to "staff at MDC" generally. (Ptf. Opp. at 1.) However, Plaintiff explicitly and repeatedly states in the Complaint that RN Ortiz and others at MDC "committed [] acts of negligence," that his "injuries resulted from the negligence of staff and medical personnel," that "staff and medical personnel were negligent in failing to administer any proper medical attention," and that "the combined negligence of staff and medical personnel" was the "direct and proximate" cause of his "second degree burns," (Compl. ¶¶ 3, 5, 5J, 6.) As noted

previously, "deliberate indifference," must rise above the level of "mere negligence." *Jabbar*, 683 F.3d at 57 (internal citation omitted).  Even aside from Plaintiff's own description of Defendants' conduct as negligent, Plaintiff does not allege any facts from which the Court could infer that either RN Ortiz or any other individual MDC staff member "knew of a substantial risk of [serious] harm" to Plaintiff, much less that in addition to seeing RN Ortiz in the medical services office, or any other staff member consciously disregarded that risk.  *Jabbar*, 683 F.3d at 58.  Indeed, Plaintiff asserts that RN Ortiz also came to his cell "to wrap [his] foot," advised Plaintiff to stop using the A&D ointment that she suspected might be delaying the healing process, "commended [him] for [his] efforts and said that [he had] done a good job at keeping [his foot] clean." (Ptf. Opp. at 2-3.)  This is hardly the rapport of an individual who is "deliberately indifferent" to the medical needs of an individual in her care.  Plaintiff also fails to allege facts showing that any other MDC official was deliberately indifferent to his injury.  The only other person mentioned in the Complaint, Officer A. Moonan, is alleged to have "called medical several times requesting medical attention for plaintiff" on the day of the alleged injury.  (Compl. ¶ 5E.)  Finally, to the extent Plaintiff's medical records show the burn had healed and though he now argues that the condition of his wound is itself

evidence of deliberate indifference, "[t]he bare allegation that [] treatments have so far been unsuccessful is insufficient to state a claim for deliberate indifference." *Bryant v. Wright*, 451 F. App'x 12, 14 (2d Cir. 2011). Accordingly, the Complaint fails to allege adequate facts to state a claim under the Eighth Amendment. And, in any event, the availability of alternative administrative remedies by virtue of BOP's Administrative Remedy Program pursuant to the PLRA, which Plaintiff failed to exhaust before asserting his *Bivens* claim, forecloses any relief under *Bivens*. Accordingly, Plaintiff's *Bivens* claim is dismissed, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the forgoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED** in its entirety.

Federal Rule of Civil Procedure 15(a) dictates that leave to amend a complaint shall be freely given "when justice so requires." The Second Circuit has advised that "the usual practice upon granting a motion to dismiss [is] to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Accordingly, the Court will consider granting leave to amend Plaintiff's FTCA claims if Plaintiff is able to provide a proposed Amended Complaint that addresses the factual deficiencies discussed in this Memorandum and Order regarding

his FTCA claims.  Plaintiff may append the proposed Amended
Complaint to a motion for leave to amend by May 26, 2024.
Plaintiff's proposed Amended Complaint may not replead facts
related to his *Bivens*/Eighth Amendment claims as any amendments
with respect to those claims would be futile in light of the
Supreme Court's decision in *Egbert v. Boule*, 596 U.S. 482
(2022), restricting *Bivens* claims to very limited contexts,
which do not apply here, as discussed above.

Defendants are directed to serve Plaintiff with a copy of
this Memorandum and Order and note service on the docket within
two (2) business days.  The parties shall meet and confer and
jointly advised the Court via ECF, no later than April 8, 2024,
how they intend to proceed.  The parties are urged to consider
settlement of this action.

**SO ORDERED.**

Dated:      March 29, 2024
            Brooklyn, New York    _____
                                  KIYO A. MATSUMOTO
                                  United States District Judge
                                  Eastern District of New York